NOT FOR CITATION OR PUBLICATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

|  |  |  |
|---|---|---|
| MARION MAYNARD, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 07-131-ART |
| | ) | |
| v. | ) | |
| | ) | |
| MINGO COUNTY, WEST VIRGINIA | ) | **MEMORANDUM OPINION** |
| SHERIFF'S DEPARTMENT, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

Plaintiff Marion Maynard, Jr. brings this action under 42 U.S.C. § 1983 and Kentucky state law against the Mingo County, West Virginia, Sheriff's Department ("MCSD") and Deputy Norman Mines. The Court held oral argument on September 3, 2008, on the pending motions in this matter, R. 65, at which time the Court disposed of all motions except for Defendant Mines's Motion for Summary Judgment, R. 34, regarding the § 1983 claim and assault and battery claims against him in his individual capacity. The Court denied without prejudice this portion of the motion so that it could review a video recording of the events at issue submitted by Defendants at the hearing. *See* R. 65 ¶ 4. Having reviewed the video, the Court concludes that it does not change the Court's initial analysis, as expressed to the parties at the hearing. Accordingly, the Court denies Mines's Motion for Summary Judgment with respect to the § 1983 claim and assault and battery claims against him in his individual capacity.

I. **BACKGROUND**

This action arises out of an incident occurring in the early morning hours of June 19,

2006, that resulted in a constable for the Commonwealth of Kentucky issuing Maynard a

criminal citation for Alcohol Intoxication and Disorderly Conduct.  Pike District Judge Darrel H.

Mullins later dismissed those charges in an August 1, 2007, order.  R. 33, Ex. 2.  In that order,

Judge Mullins made findings of fact regarding the events occurring on June 19.  *Id.*  Maynard

agrees with these findings of fact "for the most part," R. 42 at 4, but disagrees with certain

portions, *id.* at 4–5, some of which go to the heart of this action.  As a result, the Court will rely

on Judge Mullins's findings of fact in the description that follows, but also will highlight where

Maynard's factual account differs.

At approximately 3:00 a.m., Maynard and his sister, Tammy Young, entered Muncy's

Appalachian Tobacco Store in South Williamson, Kentucky.  R. 33, Ex. 2 ¶ 1.  Judge Mullins

found that Maynard had been drinking and was "visibly unsteady, staggering, and his speech was

loud and slurred."  *Id.*  Maynard admits he had been drinking, but denies he was intoxicated.  R.

42 at 2.  At around the same time, Norman Mines, an on-duty deputy with MCSD, entered

Muncy's to eat what for him was lunch.  R. 33, Ex. 2 ¶ 2.  No restaurants were open at this time

in Williamson, West Virginia, and it was customary for MCSD deputies to eat at Muncy's.  *Id.*

The parties' accounts of what occurred next differ significantly.  Judge Mullins found as

follows:

> At or about 3:11 a.m., [Maynard] and Young stood from their table
> and walk[ed] toward Deputy Mines.  [Maynard] confronted Deputy Mines,
> taunting and cursing Deputy Mines.  Deputy Mines told [Maynard] to get
> his food and leave, but [Maynard], in a loud obnoxious manner, stated
> Deputy Mines was out of his jurisdiction and couldn't do anything to
> [Maynard], because they were in Kentucky.  [Maynard] attempted to strike
> Deputy Mines and a physical altercation resulted, whereby Deputy Mines
> forced [Maynard] to the ground in an attempt to place handcuffs on
> [Maynard].

2

> At or about 3:13 a.m., Deputy Mines exits Muncy's with [Maynard],
> handcuffed [Maynard], and placed [Maynard] into the back of his MCSD
> Cruiser.

*Id.* at ¶¶ 3, 5.

Maynard gives a different version.  He states he was having a conversation with another Muncy's customer while both were waiting in line.  R. 42 at 2.  During this conversation, the customer mentioned that Mines was a police officer, R. 35, Ex. 3 at 55, and Maynard indicated he thought Mines was a "rent-a-cop," *i.e.*, a security officer, *id.* at 57.  Maynard testified that while he was in line Mines was staring at him, *id.* at 56, and kept getting closer and closer to him, *id.* at 58.  Maynard and his sister then walked to their table and waited on their food.  *Id.* at 56.  Maynard states that Mines followed them over and sat at a table facing Maynard.  *Id.* at 56, 60.  According to Maynard, Mines stated, "I'll show you what I can do . . . If you think I'm a rent-a-cop."  *Id.* at 56–57.  Mines then told Maynard he was going to arrest him once he got up.  *Id.* at 60.  Maynard responded that Mines could not arrest him because he was in Kentucky.  *Id.*  Maynard got up from his table, and then Mines "got in front of [his] face" and grabbed him by the left wrist.  *Id.*  Maynard testifies that Mines "turned me around in a choke hold and jerked me back in the aisle and slammed me down on the ground."  *Id.*  Mines then handcuffed Maynard and placed him in his cruiser.  *Id.* at 61, 64.

Getting back to where the parties' factual accounts are the same, Maynard was in Mines's cruiser for approximately twenty minutes.  *Id.* at 64.  During this time, Mines called MCSD to notify it he had detained Maynard, and MCSD sought assistance from the Kentucky State Police.  R. 33, Ex. 2 ¶ 7.  A few minutes later, either the Kentucky State Police or MCSD requested assistance from the Pike County Sheriff's Office, which indicated that Pike County Constable

3

James Worley would respond. *Id.* at ¶ 8. At about 3:30 a.m., Constable Worley arrived at Muncy's. *Id.* at ¶ 10. After speaking with various parties, Worley issued a citation to Maynard for Alcohol Intoxication and Disorderly Conduct and released him to the custody of Ms. Young, his sister. *Id.* at ¶ 11.

Maynard later filed a motion to dismiss the charges, arguing that Mines did not have authority to detain him because Mines was outside his jurisdiction, *id.* at ¶ 12, and Judge Mullins agreed with Maynard. As an out-of-jurisdiction officer, Mines had the authority of an ordinary citizen and thus was only entitled to make an arrest under Kentucky citizen's arrest statute, KY. REV. STAT. § 431.005. *Id.* at Conclusions of Law. Judge Mullins concluded that § 431.005 did not authorize Mines's arrest of Maynard and therefore held that the arrest and detention were unlawful. *Id.* As fruit of a poisonous tree, Judge Mullins suppressed the evidence obtained from the unlawful arrest/detention and granted Maynard's motion to dismiss. *Id.* at Judgment.

Based on the above, Maynard filed suit on June 13, 2007, against MCSD and Norman Mines. R. 1. Though not entirely clear from the Complaint, Maynard appears to assert the following claims in this action: (1) a § 1983 claim against Mines and MCSD, *id.* at ¶¶ 7–9, 12; (2) a § 1985 claim against Mines and MCSD, *id.* at ¶¶ 10–12, 18; and (3) state law claims for assault and battery, *id.* at ¶¶ 13–14. As explained above, the Court disposed of all but the § 1983 claim and assault and battery claims against Mines in his individual capacity at the September 3, 2008, hearing.

**II.   STANDARD**

A grant of summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

4

that the moving party is entitled to judgment as a matter of law." Fᴇᴅ. R. Cɪᴠ. P. 56(c).  The moving party bears the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  This burden is met simply by showing the court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial.  *Id.* at 325.  The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).  A material fact is one that may affect the outcome of the issue at trial, as determined by substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When determining if summary judgment is proper, the Court's function is not to weigh the evidence but to decide whether there are genuine factual issues for trial.  *Id.* at 249.  A genuine dispute exists on a material fact if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  The evidence should be construed in the light most favorable to the nonmoving party when deciding whether there is enough evidence to overcome summary judgment.  *See id.* at 255.  While this Court must draw all inferences in the light most favorable to Plaintiff, as the non-moving party, summary judgment may be granted "if the record, taken as a whole, could not lead a rational trier of fact" to find for Plaintiff. *McKinnie v. Roadway Express, Inc.*, 341 F.3d 554, 557 (6th Cir. 2003).

## III.   Sᴇᴄᴛɪᴏɴ 1983 Cʟᴀɪᴍ Aɢᴀɪɴsᴛ Mɪɴᴇs ɪɴ Hɪs Iɴᴅɪᴠɪᴅᴜᴀʟ Cᴀᴘᴀᴄɪᴛʏ

Mines argues that the § 1983 individual-capacity claim asserted against him is barred by qualified immunity.  R. 34, Attach. 4 at 7–11.  When confronted with a claim of qualified immunity, a court first must ask the following question: "[t]aken in the light most favorable to

5

the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If a violation can be shown, the next step is to ask whether the right was clearly established. *Id.* at 202.

In evaluating a qualified immunity defense at the summary judgment stage, a court generally relies on the plaintiff's version of the facts.  *Parsons v. City of Pontiac*, 533 F.3d 492, 500 (6th Cir. 2008) ("Evaluating the defense of qualified immunity on a motion for summary judgment requires that we 'adopt[ ] . . . the plaintiff's version of the facts.'" (alterations in original) (quoting *Scott v. Harris*, --- U.S. ----, 127 S. Ct. 1769, 1775 (2007))).  Here, however, Mines argues that Judge Mullins's findings of fact, not Maynard's version, should control.  R 34, Attach. 4 at 6–7.  Because the Court must determine the facts controlling its qualified immunity analysis, the Court first will address this issue.

### A.    Controlling Facts

Mines relies on both FED. R. EVID. 201 and issue preclusion in support of using Judge Mullins's findings of fact.  In addition, at the hearing Mines argued for the first time that the video recording of the events further supports Judge Mullins's findings of fact.

#### 1.    *Federal Rule of Evidence 201*

Rule 201(b) provides, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  The Sixth Circuit has held that Rule 201 does not apply where the parties dispute the facts sought to be judicially noticed even where another court previously ruled on those facts.  For example, in *Collier v. United States*, No. 02-3081, 2003 WL 21525099, at *1

6

(6th Cir. July 2, 2003)[1], Collier was convicted of bank fraud and making false statements to the

Small Business Administration.  Prior to his indictment, Collier had filed for Chapter 7

bankruptcy, and in the course of that proceeding the bankruptcy court found that Collier lacked

the criminal intent to defraud and therefore discharged Collier's debt.  *Id.* at *1, *5.  The district

court refused Collier's request to take judicial notice of the bankruptcy court's finding on his lack

of fraudulent intent beyond acknowledging that the bankruptcy proceeding had taken place, and

Collier appealed that decision.  *Id.* at *5.  The Sixth Circuit affirmed, holding that Rule 201 did

not apply to the bankruptcy court's factual finding because it was subject to reasonable dispute.

*Id.* ("[T]hese facts were capable of reasonable dispute as demonstrated by the prosecution (sic)

disputation thereof and the jury's finding to the contrary.  Therefore, they were not subject to

judicial notice . . . .");  *see United States v. Garland*, 991 F.2d 328, 332–33 (6th Cir. 1993)

(indicating that the court would take judicial notice of the "existence of the judgment and the fact

that the Ghana criminal court has made detailed findings of fact on issues relevant to the case at

hand" but did "not judicially notice the truth of the statements contained in the Ghana judgment

because some of these facts may remain in dispute"); *see also Gen. Elec. Capital Corp. v. Lease*

*Resolution Corp.*, 128 F.3d 1074, 1082 n.6 (7th Cir. 1997); *United States v. Jones*, 29 F.3d 1549,

1553 (11th Cir. 1994).  Because Maynard specifically disputes certain of Judge Mullins's factual

findings, *see* R. 42 at 2, 4, Rule 201 does not allow the Court to take judicial notice of those

findings.

---

[1]   Unpublished decisions of the Sixth Circuit are not binding under the doctrine of stare decisis. *United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007).  Accordingly, the Court considers such decisions for their persuasive value only.  *See id.*

2.      *Issue Preclusion*

Issue preclusion bars parties from re-litigating an issue actually litigated and finally decided in an earlier action. *See Yeoman v. Commonwealth*, 983 S.W.2d 459, 465 (Ky. 1998). Kentucky law[2] requires four elements for issue preclusion to apply: (1) the issue in the second case must be the same as the issue in the first case; (2) the issue must have been actually litigated; (3) even if an issue was actually litigated in the prior action, the issue must have been actually decided in that action; and (4) the issue in the prior action must have been necessary to the court's judgment. *Id.*; *see also Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 367 (6th Cir. 2007) (interpreting Kentucky law as requiring the same four elements).

Here, issue preclusion does not bar Maynard from re-litigating the facts underlying his claims because those facts do not affect Judge Mullins's decision to dismiss the charges against Maynard. Because KY. REV. STAT. § 431.005 allows a citizen to make an arrest when he has probable cause to believe that the person being arrested committed a felony, Judge Mullins's decision hinged on his conclusion that "[t]here is no evidence that [Maynard] committed a felony in the presence of Deputy Mines." R. 33, Ex. 2, Conclusions of Law. The key factual findings to which Maynard objects–his behavior toward Mines and whether Maynard or Mines was the aggressor–do not affect Judge Mullins's dismissal of the charges because that decision would remain the same even if he found that Mines attacked Maynard rather than the other way around. In other words, you could entirely cut out the factual findings from Judge Mullins's order and yet

---

[2] Where a party seeks to have a federal court give preclusive effect to a state court proceeding, the federal court must look to the state's res judicata principles to resolve the issue. *See Knott v. Sullivan*, 418 F.3d 561, 567 (6th Cir. 2005).

8

his decision to dismiss the charges against Maynard would stay the same.[3]  Without such a causal connection, the factual findings about Maynard's behavior were not necessary to Judge Mullins's decision and thus issue preclusion does not bar Maynard from re-litigating those factual findings. *See Sedly v. City of West Buchel*, 461 S.W.2d 556, 558 (Ky. 1970) (stating that res judicata does not apply "to matters which were immaterial or unessential to the determination of the prior action or which were not necessary to uphold the judgment").

For this reason, Mines's citation of *Prokos v. City of Athens*, No. 02-4291, 2004 WL 2940867 (6th Cir. Dec. 21, 2004), in support of applying issue preclusion is unavailing.  After being indicted in state court on various charges, Prokos filed a motion to suppress, which the state court denied.  *Id.* at *1, *4.  A jury later acquitted him, and Prokos filed suit under § 1983 alleging the execution of a false and misleading search warrant.  *Id.* at *1–*2.  The Sixth Circuit held that issue preclusion barred Prokos from contesting whether there was probable cause to issue the search warrant because that issue had been litigated in the state court suppression hearing.  *Id.* at *5–*6.  Unlike here, where Judge Mullins's factual finding that Maynard was the aggressor does not affect his decision to dismiss the charges, the state court's determination in *Prokos* that probable cause existed was necessary to its conclusion to deny Prokos's motion to suppress, *i.e.*, without the court finding probable cause, it would have granted the motion to suppress.

---

[3]  As Mines notes, that Judge Mullins found Maynard attacked Mines arguably supports a conclusion that Maynard committed a felony under KY. REV. STAT. § 508.025, which provides that it is a class D felony to attempt to cause physical injury to a state, county, city, or federal peace officer.  Had Judge Mullins concluded that Maynard's actions constituted a felony and therefore that Mines could effect a citizen's arrest, his finding that Maynard was the aggressor may have been necessary to such a decision.  But that is not the case here.

9

3.    *Video Recording*

While a court generally relies on the plaintiff's version of the events when evaluating

qualified immunity at the summary judgment stage, the Supreme Court in *Scott v. Harris*, ---

U.S. ----, 127 S. Ct. 1769, 1776 (2007), held that in appropriate circumstances a court should

view the facts as depicted by a videotape rather than adopt the plaintiff's version.   The Court

stated,

> When opposing parties tell two different stories, one of which is blatantly
> contradicted by the record, so that no reasonable jury could believe it, a
> court should not adopt that version of the facts for purposes of ruling on a
> motion for summary judgment.
>
>     That was the case here with regard to the factual issue whether
> respondent was driving in such fashion as to endanger human life.
> Respondent's version of events is so utterly discredited by the record that no
> reasonable jury could have believed him.   The Court of Appeals should not
> have relied on such visible fiction; it should have viewed the facts in the
> light depicted by the videotape.

*Id.*

The question, therefore, is whether the video recording from Muncy's so "blatantly

contradict[s]" and "utterly discredit[s]" Maynard's version of events that the Court should not

adopt his version and instead rely on the video.   *Id.*   As an initial matter, there is no audio on the

recording, so the video cannot corroborate or discredit Maynard's version of what was said

between Mines and Maynard.   Additionally, the video is of poor quality and plays as if on fast-

forward.   In relevant part, the video recording shows Maynard and his sister sit down at a table,

followed shortly thereafter by Mines sitting at a table diagonal to them such that Mines was

facing Maynard, which is consistent with Maynard's testimony, *see* R. 35, Ex. 3 at 56, 60.   The

video then shows Maynard and his sister rise to exit their table.   At about the same time, Mines

10

exits his table so that Maynard and Mines are now facing each other. A physical altercation then

ensues. This basic chain of events does not contradict Maynard's version (or Judge Mullins's

version either). Moreover, because of the poor video quality and the fact that it plays at a rapid

pace, the Court cannot determine if Maynard attempted to strike Mines, as Judge Mullins found.

As such, the video from the surveillance camera does not blatantly contradict or utterly discredit

Maynard's version of the facts such that the Court can rely on the video when addressing Mines's

qualified immunity defense.

In sum, Rule 201, issue preclusion, and the video recording do not require this Court to

use Judge Mullins's findings of fact in place of Maynard's version. Accordingly, the Court will

apply the general rule in a qualified immunity analysis and rely on Plaintiff's version of events.

### B.      Do the Facts Alleged Show a Constitutional Violation?

Because § 1983 only provides a method of vindicating federal rights conferred elsewhere,

addressing a claim brought under § 1983 "begins by identifying the specific constitutional right

allegedly infringed." *Graham v. Connor*, 490 U.S. 386, 394 (1989). Maynard's Complaint,

unfortunately, is far from a model of clarity in this regard as it references the Fourteenth

Amendment several times, R. 1 ¶¶ 1, 6, the Due Process Clause of the Fifth and Fourteenth

Amendments, *id.* at ¶ 12, and his constitutional rights, privileges, and immunities generally, *id.* at

¶ 9. In his response to Mines's summary judgment motion, Maynard states he was unlawfully

arrested in violation of his Fourth and Fourteenth Amendments. R. 42 at 9. Mines argues that

the Fourteenth Amendment applies because Maynard was a pretrial detainee. R. 34, Attach. 4 at

12. At the September 3 hearing, the parties focused on the allegedly unlawful arrest, which the

Fourth Amendment protects against, *see Logsdon v. Hains*, 492 F.3d 334, 340 (6th Cir. 2007)

11

("The Fourth Amendment protects the right of individuals to be free from improper arrest and detention.").

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed," *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Accordingly, "for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002). "A police officer has probable cause only when he discovers reasonably reliable information that the suspect has committed a crime." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). "[I]n obtaining such reliable information, an officer cannot look only at the evidence of guilt while ignoring all exculpatory evidence. Rather, the officer must consider the totality of the circumstances, recognizing both the inculpatory and exculpatory evidence, before determining if he has probable cause to make an arrest." *Id.* In determining whether probable cause existed, a court may "consider only the information possessed by the arresting officer at the time of the arrest." *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008).

According to Maynard, once he and his sister went to a table to wait on their food, Mines followed them and sat at a table facing Maynard. R. 35, Ex. 3 at 56, 60. Mines then told Maynard he was going to arrest him when he got up, and Maynard responded that Mines could not arrest him because he was in Kentucky. *Id.* at 60. Once Maynard got up, Mines "got in front of [his] face," grabbed him by the left wrist, and then "turned [him] around in a choke hold and jerked [him] back in the aisle and slammed [him] down on the ground." *Id.* Under this version of events, a reasonable jury could conclude that Mines did not have reasonably reliable

12

information at the time of the arrest that Maynard committed a crime and, therefore, that he lacked probable cause to arrest Maynard.

Mines, of course, offers a very different version of the events, and Judge Mullins believed that version. But, as explained above, the Court cannot accept Judge Mullins's findings of fact in place of Maynard's sworn testimony of the events. As it stands, then, there are two competing versions of what occurred at Muncy's. The Court need not, and indeed cannot, resolve this factual dispute at the summary judgment stage because the dispute demonstrates that genuine issues of fact remain for trial.[4] *See, e.g., Bass v. Robinson*, 167 F.3d 1041, 1046 (6th Cir. 1999) (reversing a grant of summary judgment in favor of plaintiff's excessive force claim "because it was impossible for the district court to make an objective determination under these contested facts which turn on credibility, and because this Court must consider any evidence in the light most favorable to Plaintiff"); *Jackson v. Hoylman*, 933 F.2d 401, 403 (6th Cir. 1991) (affirming a denial of summary judgment to police officers because "it is impossible to determine, without choosing between the parties' sharply different factual accounts, whether the force the officers used, objectively assessed, was reasonable").

### C.   Were Maynard's Fourth Amendment Rights Clearly Established?

Once a potential violation of a plaintiff's constitutional rights has been established, the Court next determines whether that right was clearly established. *Saucier*, 533 U.S. at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he

---

[4] Because a reasonable jury could conclude that Maynard was unlawfully arrested in violation of the Fourth Amendment, the Court need not address Mines's argument that Maynard's § 1983 claim fails because he did not suffer a violation of his Fourteenth Amendment rights.

confronted." *Id.* at 202.

The Sixth Circuit has repeatedly held "the law was clearly established that, absent probable cause to believe that an offense had been committed, was being committed, or was about to be committed, officers may not arrest an individual." *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *see also Logsdon*, 492 F.3d at 344; *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 310 (6th Cir. 2005). The Court thus concludes that Maynard's Fourth Amendment right to be free from an arrest without probable cause in the specific facts of this case was clearly established at the time of the arrest. Indeed, at the hearing, Mines conceded as much. As such, Mines is not entitled to summary judgment on Maynard's § 1983 claim.

## IV.   STATE LAW CLAIMS

Maynard also asserts claims for assault and battery against Mines. R. 1 at ¶¶ 13–14. In response, Mines argues he was entitled to use self-defense, R. 34, Attach. 4 at 17–21, but this argument is premised on Judge Mullins's factual findings, *id.* at 18. As explained, however, those findings are not binding here, and the Court analyzes Maynard's claims at the summary judgment stage based on the facts as he alleges them to be. Under such facts, Mines's use of self-defense was not justified because he was the aggressor.

Under Kentucky law, assault only requires the threat of unwanted touching, while battery is an actual unwanted touching. *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. Ct. App. 2001). Intent is an essential element of both claims. *Id.* Based on Maynard's testimony that Mines "got in front of [his] face," grabbed him by the left wrist, "turned [him] around in a choke hold and jerked [him] back in the aisle and slammed [him] down on the ground," R. 35, Ex. 3 at 60, a reasonable jury could conclude that Mines both threatened and subjected Maynard to unwanted

14

contact, thereby precluding summary judgment on the assault and battery claims.

## V.   CONCLUSION

Accordingly, it is **ORDERED** that Norman Mines's Motion for Summary Judgment, R. 34, with respect to the § 1983 claim and assault and battery claims against him in his individual capacity is **DENIED**.

This the 6th day of October, 2008.

Signed By:

*Amul R. Thapar*  AT

**United States District Judge**

15